Good morning, Your Honor. Scott Elsey for the appellant, KJ Win. May it please the Court. Your Honor, this case obviously concerns a default judgment, which is the most drastic remedy available. Default judgment, of course, is not favored by the Fifth Circuit. Here, the default judgment is in excess of $2.8 million and concerns an automobile accident where we have two plaintiffs, one that incurred medical expenses at the time of around $30,000 and the other plaintiff that incurred medical expenses at the time of around $70,000. The defendant, KJ Win, located in California and never knew about this lawsuit. It failed to keep a current address with the California Secretary of State. Ultimately, when the plaintiff filed suit, the plaintiff filed suit, they attempted to service the process, did the process of serving the California Secretary of State. KJ Win never knew about this lawsuit. All right, but the district court found that the default was willful. That's a fact finding. And actually, that, I think, ends the analysis, right? So, we can't overturn that fact finding unless it's clearly erroneous. What facts are in the record that shows that KJ Win's default was not willful? The record itself, we would submit, does not support a finding of willful default. The cases referenced by the district court, the cases referenced by the plaintiff, the Wooten case, the Orlansky case, the district court case out of California, the Verizon case, all of those cases concerned a situation where the record was clear that there was personal service on the defendant. All right, but that's not what I asked. What I asked was what evidence is in the record that shows that the district court's finding of willful default was clearly erroneous? Your Honor, we would submit that the Fifth Circuit's prior decision in the Boyce case and the district court case of, excuse me. All right, but I'm not talking about a decision. That's not going to excuse what KJ Win did. I'm asking what shows that there was excusable neglect, that it wasn't willful? Yes, Your Honor, and that does go to the point of the standard of review for the issue that's before the court asking for relief under Rule 60. And we would respectfully submit that it is an abuse of discretion as to a portion of this appeal. There is a de novo review portion of this appeal also under Rule 60 that I certainly hope to address. But Your Honor's correct. The district court did make a finding, a statement that this was a willful default. The district court said that KJ Win couldn't even conjure an affidavit from its lawyers explaining why it failed to update its address, explaining anything as to why it got a default judgment entered against it. I'm asking you, is that wrong? Because if it's not wrong, the default judgment itself stands. Your Honor, in response to your question, that statement is not wrong, but we would submit that as stated by the Fifth Circuit, that finding, that determination is not dispositive of the issue. And that here, the fault was the neglect of this company that is not, and the owners of which that are not English speaking, or at least is not their primary language. Well, but Wooten, the district court cited Wooten. I'm looking at Wooten right now. Our court was unpersuaded by similar arguments to what you're making right now. Because the company offered in Wooten no explanation for what happened between its presumed receipt of process and the date on which it retained counsel, etc. and so forth. In other words, KJ Win bore the burden of showing why it defaulted, why there was excusable neglect. KJ Win didn't do anything to explain it. We didn't get the lawsuit. That's not enough for us to overturn a finding by the district court that its default was willful. Your Honor, we would submit that the Boyce case in the Fifth Circuit and the Guest case, the district court case out of Louisiana, provide support that a mere failure to keep a current address does not support a finding of the ... But you've got to explain it. It's California law to keep a current address. And, I mean, I've got to say I'm sympathetic to you because somebody could have forgotten to send something into the Secretary of State's office whenever they were required to do so. But there's no explanation at all as to why it was willfully done or not willfully done. Nobody even so much as swore, we forgot to do it and here's why, because my mother was in the hospital dying. I mean, there's nothing. And the district court said, there's nothing, it was willful and the default therefore was willful, I'm not going to set it aside. We can't set aside what the district court did unless that willfulness finding is clearly erroneous. And if you can't give me any facts as to why this was excusable, I don't see how I can overturn the district court. Speaking for myself. Yes, Your Honor. I understand. The point of it is, is that what was done was done the best they could, best we could under the circumstances once the default judgment was discovered. And that's specifically spoken to by the cases that are in the briefs, Your Honor, as to what was the defendant's conduct after the default judgment was discovered. As to the Wooten case, Your Honor, again, in that case where there was a finding of willfulness and the court actually used the same language that was referred to by the district court in terms of playing games with the court. In the Wooten case, the defendant there was personally served twice. It was an extensive engagement, as well in the Verizon case out of California and as well as the Olinsky case. There, there was personal service. Here, Your Honors, it is a circumstance of neglect to keep a current address. It is a situation of as quickly as we could seeking relief under Rule 60. We do not have an affidavit submitted to the court in this case. I will submit, Your Honor, that K.J. Winn has personal counsel in Mississippi and in California now. They are currently engaged in coverage litigation with their own insurer, Prime Insurance. I'm not a part of that, obviously, and I have to be very careful in my representations to the court. Nothing I say I want to in any way comment on coverage issues, whether there is coverage or there is not coverage. But in that case, to address Your Honor's point, K.J. Winn's personal attorney has filed pleadings in that case to make the point and establish that the court is certainly entitled to take judicial notice of. It did not know about the lawsuit. It knew about the claim. Prime knew about the claim. Plaintiff's counsel was in ongoing communications with the liability insurer about the claim, but nobody, the insurer or K.J. Winn, knew about the lawsuit. Mr. Elsey, it does seem to me that all sounds very reasonable what you're telling us, and I certainly accept your descriptions. But Judge Johnson had a job to do when she was presented with this issue. And whether Judge Wilson is right or not on what Wooten demands, it does seem to me that if he is right, there was a failure at that time to give anything to Judge Johnson, to show her a basis not to deny relief on Rule 60. So maybe there was a story to tell, but the problem is it wasn't told, and Judge Johnson had to rule. What's your response? Your Honor, admittedly, I wish the record was fuller and more extensive. It's not fuller. It's empty right now. Well, Your Honor, and thus is the nature of the circumstance with a default judgment for a defendant who doesn't speak English and is 3,000 miles away and was not given, was not aware of the case. Your Honor, in terms of the effort to come to this court and ask for relief under Rule 60, asking for that the matter be tried on the case on the merits, the Fifth Circuit has indicated that it is a sum total equities that all circumstances must be considered inclusive of the issue of willfulness, and that, from the case aside in the brief, the mere failure to keep an address current is not in and of itself indicative of a willful default, Your Honor. So there's a couple of different points. I want to make an address in terms of looking at the totality of circumstances. The meritorious defenses issue, the equities issue, as the courts, as Your Honors will remember, this concerns of automobile accident involves seven automobiles on Interstate 20. K.J. Wynn's vehicle was not involved in the accident. So not only was this out-of-state company not aware of the lawsuit, its truck was not even involved in the accident. The photographs that the complaint showed that it is fully pulled off on the side of the interstate, and the only allegations on the face of the complaint, the plaintiff's own complaint, are that there was some mystery truck on the interstate that changed lanes abruptly, continued on, and apparently no one's ever heard from this mystery truck again, but it set off a series of causation of impacts between seven vehicles, none of which, again, was the K.J. Wynn vehicle. So there are clearly going to be meritorious defenses for an apportionment of liability for any one of those seven vehicles that were involved in the accident, including the plaintiff's vehicle. Another point, Your Honor, aside from the Rule 60... Well, wasn't there an evidentiary hearing on the damages? There was, Your Honor, and the award of... Well, you're talking about apportionment of damages and all of that, I mean... Yes, Your Honor, and that would be a part of our basis of seeking relief under appeal. Again, I do wish the record was more full and more extensive, but we're dealing with what we have at the time. But you didn't raise the damages issue in the Rule 60 motion. Yes, Your Honor, but the application and award of damages and the failure to apportion fault is a legal issue, as well as the issue... I understand, but don't you have to put that before the district court before it's preserved to raise here? No, Your Honor, the Home Depot case specifically says when it's a legal issue and when it would impose an injustice... You're talking about Rollins? Yes, Your Honor. Well, Rollins is talking about when we can reach a forfeited issue, so you concede the issue was forfeited. No, Your Honor, I would concede that that's the concern and that it was not forfeited because of the circumstances, because it is a legal issue, not a waiver issue. It's a forfeiture legal issue, and we would submit that it's properly before this case as a matter of law because it does involve a miscarriage of justice, either the one issue being a failure to apportion among the other vehicles involved in the accident, and in addition to that, the jurisdictional issue, Your Honor, of the basis for the jurisdiction of the default judgment at the time the default judgment was entered. The district court did think it had jurisdiction to enter the default judgment, but the record at the time the default judgment was entered was supposed to include three things, proof of service of summons, the complaint, and the order allowing service of process in the California Secretary of State. That was not in the record at the time the default judgment was entered. The appellee has since supplemented the appeal record to show or at least assert that all three of those things were in fact served on the California Secretary of State, and so it is admittedly a technical issue, a technical error, but no more so than the technical error of failing to keep an updated address with the California Secretary of State. Your Honor, unless the honors have a question at this time, I would ask to reserve the balance of my time for rebuttal. Certainly. To be clear, you don't get the extra two minutes. Your rebuttal time is the same. From the time, I apologize. Let me continue then if that's. Oh, heck, I should have explained. No, Judge, I should know that. A few points that I want to make sure and get out for the court's consideration and allowing my time on the end. K.J. Winn did not know it. There should have been more in the record for the district court to consider. The district court was not aware. The district court thought it had judgment. There is the 11-160 issue where the district court's grant of summary judgment awarded twice the amount that was allowed under Mississippi law. Again, a legal issue that's probably before this court. Talk and tell me a little bit more about that, that it exceeds the caps. Yes, Your Honor. Under 11-160, there have been two cases, one from the Mississippi Supreme Court and one a federal district court case. Both apply or both are consistent that as a matter of tort reform, the legislature has spoken and that the cap applies to all plaintiffs. Collectively, not each individual plaintiff. Correct. That's the issue? Correct. Singular is plural. Plural is singular as a matter of statutory construction. And the only two cases that have addressed that in terms of an issue of Mississippi law say it applies to all plaintiffs. Here, the court What's the Mississippi, what's the Supreme Court case that says that? The... All right, Judge. If you want to find it and tell us when we vote. Yes, Your Honor, I can do that. And there's a speaks to it. Everything that we have authority speaks to, it applies to all the plaintiffs. That's the additional jurisdictional issue. The additional issue that comes under the subsection for a void judgment, it is not subject to abuse of discretion or clear error. That is ruled, that is considered de novo, Your Honor. One more final issue. I just want to be, you're not contesting that the California Secretary of State was properly noticed. I mean, notice was properly served on the California Secretary of State. You're just saying you didn't get it because there was no address. Correct. Well, K.J. Winn did not keep a current address for the California Secretary of State, and that is the reason that it did not get served through the California Secretary of State. The appellees have presented an affidavit showing that they served the three items on the California Secretary of State, but that was not before the court at the time of the default judgment. So the court, again, it's a technical issue, it's an error. But you're saying if it was, you wouldn't have gotten it because of the lack of a current address. Which is the fault of K.J. Winn, by failing to maintain the current address. But we submit. And again, I mean, I guess your time is up, and I still haven't heard anything that explains why you didn't have a current address. Service on the Secretary of State of California is what the law says you do. Yes, Your Honor. I don't know what else the plaintiff was supposed to do. Just not take a default judgment against you. That's what they were supposed to do. Well, pursuing personal service is what would support a willful default for this, based on the case law we have, we submitted in the brief, Your Honor. It was not a willful default. And separate from that is the jurisdictional issue, not only for 11-1-16, not only for the personal jurisdiction of what was in the record, Your Honor. There's also, apparently, again, the record is insufficient on the district court level. But in the briefing on appeal, we have learned that the plaintiffs actually did recover their damages from one of the vehicles that was involved in the action. The district court was not aware of that, but awarded all of the plaintiff's damages in excess of two, claim damages in excess of $2.8 million as a matter of equity, due process, and seeking relief under Rule 16, Your Honor. The mere fact that the plaintiffs have already recovered at least some of their damages, which was not considered in the award of the default judgment itself warrants reversal and a grant of relief under Rule 16. Thank you, Counsel. We'll hear from you again. May it please the Court. I'm Courtney Wilson for the Appellee's Plaintiffs, Ms. Cheryl Roberts and Mr. William Chambers. May I proceed? Proceed. Thank you. I'd like to start with what I conceive of as the second issue, which is the willfulness of the default. The district court properly found that K.J. Nguyen was in willful default because, very specifically, K.J. Nguyen presented no evidence of excusable neglect. Under Rule 55, you can set aside a default for good cause shown, reflecting the Rule 60B, Relief from Judgment Standard. You weigh three factors when you are considering that. Is the defendant in willful default? Is there prejudice to the plaintiff? And has there been a meritorious defense presented? Now, Judge Johnson's decision in this issue is reviewed for abusive discretion. It's a very deferential standard. The question is, was K.J. Nguyen in willful default? The answer to that is, unequivocally, yes. In raid Chinese drywalls. How's it unequivocally yes? Because they presented no evidence. It's a complete failure of proof on behalf of K.J. Nguyen. Well, that doesn't get you to willful neglect or willful default. What it might negate is excusable neglect. I mean, I don't know that one, I don't know that it's a binary world where it's, if it's not excusable neglect, it must be willful or vice versa. I understand, Your Honor. Under the case law, I think this establishes the willfulness of the neglect, very particularly the Verizon, California case that Judge Johnson cited. It's directly on point with this set of facts. In that case, a defendant provided a series of false addresses for service of process into the California Secretary of State. But we don't know that they deliberately provided a false address here. They just didn't update it, right? Well, Your Honor, K.J. Nguyen provided one address to the California Secretary of State, and K.J. Nguyen provided a different address to the Federal Motor Carrier Safety Administration. All right, but that doesn't mean either one was wrong. One of them might have been out of date, or both of them might have been. Well, one of them was a vacant address, and one of them was a group of people who had no idea who K.J. Nguyen was. So, I don't believe there is anything in the record that would lead you to believe this is just a failure to update the address. What you see is a company providing different addresses that are not correct to do different state and federal institutions, where there are obligations to accurately represent where people can find you, particularly for service of process. Well, I've got a little experience with the Secretary of State's office, not in California, but in Mississippi, and I can wager you that that database right now today is filled with addresses that are out of date, not updated, agents for service of process that are no longer agents for service of process. People forget to do it. People neglect to do it, even if they get a reminder, email addresses change. It's real hard for me to get to willfulness based on the address was wrong in the Secretary of State's database. I understand, Your Honor, but that's not my only evidence of willfulness. The course of conduct through this litigation establishes willfulness. Since 2022, the plaintiffs have been trying to resolve this lawsuit. We were in correspondence with Prime Insurance Company. Prime very specifically denied coverage and said, we're not defending this case. They directed us to talk directly to their insured, who is a Chinese speaker. They would not give us any information on how to contact that Chinese speaker, though. The insurance company. That's correct. What I mean is the insurance company, can we really hold the insured to have willfully defaulted based on what the insurance company did? Well, Your Honor, I argued in the lower court that Prime lacked standing to file this lawsuit. The district court found that because of the insurance contract, Prime had standing to act. I think if Prime has standing to act in this lawsuit, Prime has standing to act in all reaches. I don't think we can divide this. It's a little bit of a reach to go from one party to another to ascribe willfulness to that first party. Give me a second. I'm not done.  So we're told, you have to go contact the insured directly. I would be happy to do that, except I don't know how to get to him. And they say, well, that's all we've got for you. Good luck. So left with that option, the only thing left for us to do was to serve it by some legal process, to go through the California Secretary of State to achieve service process, because nobody could find Mr. Zhang. Not me, not process servers, not private investigators, not even KJ Nguyen's own counsel. So what you end up with then is KJ Nguyen chose to leave the United States and go back to China. They chose who their registered agent was going to be. They chose that they were going to make that registered agent unavailable by providing vacant addresses or addresses where people don't know who KJ Nguyen is. They chose to not update those addresses, not with the Secretary of State, not with the Federal Motor Carrier Safety Administration. They made themselves unreachable. And that is the issue. The plaintiffs chased KJ Nguyen around for years, trying to get somebody to respond, trying to get somebody to engage. And at the end of that rope, we went through this procedure with the California Secretary of State's office, where we, again, jumped hoops trying to serve this defendant. They are consciously engaged in some sort of game, making it difficult for a plaintiff to find where they are, who they are, how to serve them. And it's that action that supports the willfulness finding. And that is what the court, the Ninth Circuit, found in the Verizon case, this shell game with potential litigants. Further, I find it disingenuous that KJ Nguyen now wants justice, when for years they have avoided responsibility for this rec, they have avoided responsibility for service of process. The defendants argued the guest's opinion in their briefing. And that is an Eastern District of Louisiana opinion. It has no precedential value before this court. But even in that case, the defendant did update their address with the Insurance Commission. And it was an ERISA dispute, so there's no lost discovery in that case. It's a paperwork issue. And lastly, because that was an ERISA issue, it should have been reviewed on an arbitrary and capricious standard, which was highly deferential in contrast to the default judgment. For all those reasons, the court granted the motion to set aside. But in this case, KJ Nguyen never updated their address with anybody until they wanted to file the motion to set aside. Then suddenly, the address gets updated with the California Secretary of State's office. It's only when it serves KJ Nguyen to be available that KJ Nguyen is available. The NRA Chinese drywall decision and the NRA DSCA decisions point out that being a, excuse me, being a foreign company that may be unfamiliar with how the U.S. litigation process works, that isn't excusable neglect. A mistake as to what the consequences was of being served or having a lawsuit, that's not excusable neglect. Not only did KJ Nguyen fail to provide the district court with evidence of excusable neglect, they have willfully made themselves unavailable. I believe that's what supports the district court's opinion. Let's talk about damages if we could. You heard counsel opposite. As I ascertain at least a couple of their arguments, one is the district court enters default judgment. The district court finds the damages it found as to each plaintiff's and then imposed a million dollars as to each plaintiff to get to the total. Well, so their first argument is that doesn't portion fault among the multiple defendants that are involved in the case. That's required by Mississippi law. The other argument is that the damages that were awarded by the district court exceed the damages caps in state law. Now, do you concede that there's a problem on either count with regard to the damages? No, your honor. Okay. So you read Mississippi law differently. Let's talk about the apportionment issue. So wouldn't the KJ Nguyen be entitled to apportionment or reduction of the damages it's liable for based on what other fault there might be among defendants? I think that's an affirmative defense. I think that that is something the defendants would have had to put forward and put on evidence of to achieve. Because this is a default, that didn't happen. So should the opportunity be afforded, I guess, is another question. No, because there is a willful default here. But is there a miscarriage of justice under Rollins, under our law? No, your honor. I don't believe so, because there's a more recent decision from the Court of Appeals. It's the Rob versus McLaughlin decision. They say, Our court? No, I'm sorry. That's the Mississippi Court of Appeals. Okay. I'm just getting to whether their argument is, well, whether we forfeited the issue or not, we should be able to do this because it's a miscarriage of justice and it's an issue of law. We should be entitled to a remediator of some kind, I guess. I don't believe that's correct because, as I said, first of all, it was an affirmative defense. Secondly, damage is already finding a fact. So I think Judge Johnson is entitled to an abuse of discretion standard. But less- Well, we don't review facts by abuse of discretion, but I mean, I guess the plaintiffs would be entitled to a double recovery. No, I don't think there is a double recovery because under this Rob versus McLaughlin position, the Court of Appeals explains that when you have a prior settling defendant, that is not before the fact finder. That doesn't come before them. What they do is they apportion damages based on the comparative fault statute. And then whatever damages flow to you based on your percentage of fault. So it's just presumed that K.J. Wynn was 100% at fault? Well, obviously Judge Johnson knew there were other parties involved. We discussed the facts of the wreck at the evidentiary hearing and the facts of the wreck were recited in the complaint. Well, but she found that the complaint basically asserted a cause of action, that there were enough facts to support it. There were enough facts to support the damage. I mean, that's what you do in a default judgment. You go through and basically the facts are conceded, but there was no apportionment of fault. My point is Judge Johnson could have done that based on the facts if she had wanted to do that. She had all the facts. Well, but was it, I guess, was it error, legal error to not to do it? No, Your Honor. I don't believe so, because as I said, I think that the apportionment- Well, on the question of damages, and I just want to clarify, when you have unliquidated damages, despite the fact that you have a default judgment, you still have to offer up proof of damages. Yes, sir. And that's what you did. Yes, sir. I was going to say something and I have now been distracted, so I apologize. On the statutory caps, is it collectively plaintiffs or is it individual plaintiffs? The statutory damages cap issue, I think, is misleading. Under section 11162A, that is the Med-Mal statute of limitation, I'm sorry, statutory limitation on damages, and that is a $500,000 limit. In the Klaus decision, that's a 2007 decision from the Mississippi Supreme Court, they interpreted the interaction between the Med-Mal statute and the wrongful death statute, because that was a wrongful death case against the hospital, and there were like three wrongful death beneficiaries. The court said, we understand that under the wrongful death statute, you get multiple beneficiaries, but each of those beneficiaries does not get an individual wrongful death claim. It's one wrongful death claim, all of their recovery is derivative. That's the ruling in Klaus, and that makes perfect sense. That has never been extended to the general non-economic damages cap for civil actions. So you're saying it's an unanswered question? At the very least, your honor, yes. 11162B is the non-economic damages cap, $1 million. That has not been limited in any way, and Klaus has never been extended to it, and it doesn't make sense to do that, because, and this is just one reason, Mississippi does not allow for class actions. You join all of your plaintiffs in one action. If you could limit all plaintiffs to one $1 million recovery, you could have cases where there were 100 plaintiffs who ended up only able to recover very small amounts of money. That cannot have been the legislature's intent. Now, there's another case, the Mississippi Department of Human Services versus SW. That's a Mississippi Court of Appeals case from 2010, where they looked at the Mississippi tort claims cap and applied the cap to each occurrence instead of one occurrence. So there were six times the Department of Human Services failed to investigate abuse, and for each of those six missed investigations, there were six occurrences and six awards of cap. I think that supports my argument that Klaus is very specific to the Med-Mal statute. It does not apply to other damage caps. It is my position that under the Barfield decision, this court cannot extend the Mississippi state law beyond its present borders in the Klaus decision, so that it would not be proper for this court to extend Klaus in a way that the Mississippi courts had not done. Do you think further? Unless the court has any further questions, no, sir. All right. Thank you, counsel. Thank you. Your Honors, briefly, to make sure I address Judge Wilson's question, it is the Klaus case that speaks to the issue of 11-160. There's also the district court case, the Brown case, that's cited in our briefs, and counsel, perhaps, believes it's correct. The Klaus case concerned a wrongful death. The Brown case did not. The Brown case concerned two claimants, both asserting claims of damages for their own damages, and the district court in that case applied 11-160 as the limit for all plaintiffs. The issue before the court here for purpose of this involved the jurisdictional issues of what was before the court. It was the plaintiff's burden to show and prove that the court had jurisdiction for the entry of default judgment. A technical issue, but that was not of the record. Counsel, do you have any evidence that that address that she said proved to be a vacant, whatever, I don't know, house, building, whatever, it was vacant. You have any evidence that K.J. Winn actually, at any point in time, actually occupied that address or could have been served there? Any evidence of that? Your Honor, I couldn't speak to that. And then the other one where she said they went and there was just a group of people who didn't know anything about K.J. Winn. Any evidence or any proof that K.J. Winn at some point was in that location or could have received service at that location? Your Honor, respectfully, I couldn't speak to that any more than the plaintiff's counsel has a basis to speak to the characterization. Well, you could speak to it if they said, this is the address that was at the California Secretary of State's office. You could look at that and say, we used to be there. That used to be a good address. You couldn't do that? Your Honor, again, admittedly, the record is incomplete. All right. K.J. Winn did not receive personal service. That is a distinction on the finding of willful default. Plaintiff's counsel has characterized this as a conscious engagement of willful default. And we would respectfully submit that, no, Your Honor, the circumstances are certainly not that. The totality of the circumstances have to be considered. And one primary point that I would want to make, and it's probably the most obvious one, Your Honors, is if the court grants relief under Rule 60, nothing is lost. Plaintiffs have everything in front of it through very able counsel to pursue their claim. And if they can prove up their case on the merits and establish a basis to impose liability on K.J. Winn for a damaged amount that is allowable under applicable Mississippi law, then so be it. Everything is in front of the plaintiff. There is no harm. There is no prejudice to granting the relief under these circumstances. You've got a non-English speaking out of 3,000 miles away. You keep saying that, but whatever language they speak, they managed to get a permit from a licensing agency in the United States to operate a trucking company on the roads and highways in the United States. Yes, Your Honor. They managed to file something with the California Secretary of State's office in English. No evidence that it was ever a valid address, but they managed to do that. So, I mean, the fact that they spoke a foreign language or were in another country, I mean, that doesn't mean very much to me. I can see the point, Your Honor. All right. And would ask the court to consider the language of both of the Fifth Circuit's prior opinion and Boyce and the district court's guest opinion that the court does not condone the defendant's inability or failure to maintain its proper address with the Secretary of State's office. But still, there was no finding of a willful default. It is negligence at most, Your Honor. It is excusable negligence that speaks to the issue. If I was trying to show my default wasn't willful, I sure would have said this used to be a good address. I mean, you can't even say it was ever good. Your Honor, again, we have not been in direct contact with K.J. Wynn at the time. We're trying to seek relief under Rule 60 as quickly as possible. K.J. Wynn now has personal counsel and they have submitted findings. Well, but counsel, there is a difference. Nobody's casting aspersions at counsel. It's your client. Y'all are not going to pay the default judgment either. It's your client. So please don't, I hope you don't take anything we're asking as, you know, indicating a lack of effort on your part and that sort of thing. But your client is at issue and they're the ones who bore the burden of showing that this wasn't willful, that it was excusable. And they haven't, they just haven't done that. They haven't done, even the things Judge Graves is talking about, that would be fairly easy to do. We used to be there. We moved in 2005 and we just forgot. There's nothing in that record that suggests that. Your Honor, we're happy to supplement the appellate record, should the court consider that as a positive issue. We would submit, however— Well, but it's the district court record we're reviewing. Yes, Your Honor, but again, the record has been supplemented by the appellees in this case, up to and including a reference that they have already recovered from one of the vehicles involved in the accident. And yet they were able to recover again for at least a portion of those same damages. Your Honor, I see my time is up. I'm happy to respond to any questions, given my opportunity, in asking the court to grant relief under Rule 60 and reverse this decision to allow the case to be tried on the merits. All right, Mr. Yeltsin, thank you. Thanks to both sides for your presentation today. That is the final argument of the day, of the week, and we are adjourned.